Mr. Justice SWAYNE
delivered the opinion of the court.
Whether under the deed of Robert Morris of the 15th November, 1798, Charles Croxall was tenant for life, remainder to Mary Croxall his wife, for life, remainder to their son Thomas Croxall in tail — whether Mary Croxall was not the donee in tail under the rulé in Shelley’s case, and if so, whether her estate was a legal or equitable one — and whether *281 Thomas Croxall was not the donee or first tenant in tail, and if he were the first or the second tenant in tail, whether he took a legal estate by the operation of the statute of uses, then in force in New Jersey, or whether he took an equitable estate, the statute not executing the use created by the deed for his benefit, are questions not without difficulty, and upon which the views of some members of the court are not in harmony with those of others. As there are .grounds of decision, not involving these inquiries, upon which we are all united in opiuion, except one member of the court, as to one of the propositions, it is deemed proper to place our judgmeut upon those grounds and not to go beyond them. If Thomas Croxall, and not his mother, was the first tenant in tail, taking under the deed by purchase, and not by limitation, it is immaterial whether his estate was legal or equitable. In the law, if real property, the principles which apply to estates of both kinds, with- a few limited exceptions not affecting this case, are the same. In the consideration of a court of equity, the cestui que trust is actually seized of the freehold. He may alien it, and any legal conveyance by him will have the same operation in equity upon the trust, as it would have had at law upon the legal estate.*
The trust like the legal estate is descendible, devisable, alienable, and barrable by the act of the parties, and by matter of record. Generally, whatever is true at law of the legal estate, is true in equity of the trust estate. †
The rule in Shelley’s case applies alike to equitable and to legal estates;‡ and an equitable estate tail may be barred in the same manner as an estate tail at law, and this end cannot be accomplished in any other way.§
*282 In Doe v. Oliver* the testator had devised lands to his wife for life; remainder to the children of his brother who should be living at the death of his wife. But one child, a daughter, was living at that time. She with her husband, in the lifetime of the devisee of the life estate, levied a fine, and declared the use to A. B. after the death of the first devisee, and the termination of her life estate.
A. B. brought an action of ejectment for the lands, and recovered. It was held that the fine had a double operation, that it bound the husband and wife by estoppel or conclusion, so long as the contingencies continued, and that when the contingency happened, the estate which devolved upon the wife fed the estoppel, that the estate by estoppel created by the fine, ceased to be an estate by estoppel only, and became an interest, and gave to. A. B. exactly what he would have had if the contingency had happened before the fine was levied. If Mary Croxall took under the deed an equitable contingent remainder for life, and Thomas at her death would have taken a legal estate tail, if the estate still subsisted, the statute in his case, executing the use, then the estates could not coalesce, one being legal and the other equitable, and the rule in Shelley’s case would not apply. In that view of the subject Thomas and not his mother was the donee in tail.
A use limited upon a use, is not executed or afiected by the statute of uses. The statute executes only the first use. In the ease of a deed of bargain and sale, the whole force of the statute is exhausted in transferring the legal title in fee simple to the bargainee. But the second use may be valid as a trust, and enforced in equity according to the rights of the parties. †
But without pursuing, the subject, let it be conceded, for *283 the purposes of this ease, that Thomas Croxall was the donee or first tenant in tail, and that he took a legal estate, as contended by the. counsel for the plaintiff* in error.
Taking this view of the subject, the first inquirj^ to which we shall direct our attention is as to the effect of the act of the legislature of the 14th of February, 1818, and of the proceedings which were had under it. All the parties in interest then in esse, were before the legislature, and asked for the act, or consented that it should be passed.
There-is no ground for the imputation upon either of them of any fraud, indirection, or concealment. It is not denied that the act was deliberately passed, nor that the partition made under it by the commissioners was fair and equal; all the parties testified their approbation, and confirmed it by their subsequent conveyances. The legal doubts and difficulties which huug over the deed, the uncertainty of the rights of the several parties; the learned and elaborate arguments, and conflicting views of the counsel, and our differences of opinion in this litigation, evince the wisdom and th.e equity of the act. It is as clear by implication as it could be made by expression, that the object of the legislature was to dock the entail, and unfetter the estate. 'What is implied is as effectual, as what, is expressed.* If it were possible for the parties and the -legislature to accomplish this object, it was thus done. Had they the power ? When the deed was executed, the statute de donis was in force in New Jersey, but modified by the acts of her legislature of the 25th of August, 1784, and of the 3d of March, 1786. Fines and recoveries, as known in the English law, were then á part of her judicial system. They wore abolished by the act of June 12th, 1799. By the act of 13th of June, 1799, it was declared that no British statutes should thereafter have any force within the State. The plaintiff’s lessor was the son of Thomas Croxall, and tvas born on the 29th of March, 1821. Estates tail, under the statute de donis, were, before the passage of the statute, known in the common *284 law as conditional fees. Like estates tail, they were limited to particular heirs to the exclusion of others. The condition was, that if the donee died, without leaving such heirs as were specified, the estate should revert to the grantor. According to the common law, upon the birth of such issue, the estate became absolute for three purposes:
1. The donee could alien, and thus bar his own issue and the reversioner.
2. He could forfeit the estate in fee simple for treason. Before he could only forfeit his life estate.
3. lie could charge it with incumbrances. He might also alien before issue born, but in that case, the effect of the alienation was only to exclude the lord, during the life of the tenant, and that of his issue, if such issue were subsequently born, while if the alienation were after the birth, its effect was complete, and vested in the grantee a fee simple estate.*
In this state of the law it became usual for the donee, as soon as the condition was fulfilled by the birth of issue, to alien, and afterwards to repurchase the land. This gave him a fee simple, absolute, for all purposes. The heir was thus completely in the power of the aucestor, and the bounty of the donor was liable to be defeated by the birth of the issue, for whom it was his object to provide. To prevent such results, and to enable the great families to transmit in perpetuity the possession of their estates to their posterity, the statute de donis of the 13 Edward I, known as the Statute of Westminster the 2d, was passed. It provided, “ that the will of the donor, according to the form in his deed of gift manifestly expressed, should be observed, so that they to whom a tenement was so given upon condition, should not have the power of alienating the tenement so given, whereby it might not remain after their death to their issue, or to the heir of the donor, if the issue should fail.” Under this statute it was held that the donee had no longer n conditional fee governed by the rules of the common law, *285 but that the estate was inalienable, and must descend “per formam doni,” or pass in reversion. The evils arising from the statute were found to be very great. Repeated efforts were made by the Commons to effect its repeal. They were uniformly defeated by the nobility, in whose interest the statute was passed. It remained in force and was administered without evasion for about two centuries. In the reign of Edward IV it was held in' TaUarem’s case,* that the entail might be destroyed by a common recovery. The effect of this process was to bar alike the issue, the reversioner, and all those to whom the donor had given other estates expectant on the death of the tenant in tail without issue. The demandant took an absolute estate in fee simple.† Fines were subsequently resorted to for the same purpose. A statute of 32 Henry VIII declared a fine, duly levied by the tenant in tail, to be a complete bar to him and his heirs, and all others claiming under the entail. Other incidents were subsequently, from time to time, annexed to such estates. By a statute of Henry VII, they were made liable to forfeiture for treason. At a later period they were made liable for the debts of the tenant' to the crown, due by record or special contract: and still later they were made liable for all his debts in case of bankruptcy. The po1 rnr to suffer a common recovery has been invariably held to bo a privilege inseparably incident to.an estate tail, and one which cannot be restrained by condition, limitation, custom, recognizance, or covenant.‡
Private acts of Parliament are one of the modes of acquiring title enumerated by Blackstone. • They are resorted to when the power of the courts of justice is inadequate to give the proper relief and the exigencies of the caso require the interposition of the broader power of the legislature. They were very numerous immediately after the restoration of Charles II. The validity of statutes affecting private inter *286 ests in specific real property Las been repeatedly recognized by this court.*
Blackstone says: “Nothing also is done without the consent expressly given of all parties in being, and capable of consent, that have the remotest interest in the matter, unless such consent shall be perversely and without any reason withheld.”† Here all who were interested consented. No interest vested or contingent of the lessor of the plaintiff' in error was involved; and no consent was asked of him, for the reason that he was then unborn.
In Westby v. Kiernan,‡ it was held that a private act passed to enable the tenant in tail to raise money bound the remainder. This involved the power to destroy the estate by incumbering the property to the full amount of its value.
We entertain no doubt that the act in question was valid, and that the partition made under it, and the deeds subsequently executed, vested in each grantee a fee simple estate. This was the necessary result, whatever the quantity and character of the estates of Mary and Thomas Croxall at that time.
It remains to consider the effect of the statute of limitation relied upon by the defendant in error. The second section of the act of the 5th of June, 1787, declares that thirty years’ actual possession, where such possession was obtained by a fair and bond fide purchase of any person in possession and supposed to have a legal right and title, shall vest an absolute right and title in the possessor and occupier. The deed of Morris Croxall to Garrett D. Wall bears date on the 30th' of September, 1825. Wall conveyed to Shererd, the defendant, on the 5th of January, 1827. The special verdict finds that Wall took possession at the date of the deed to him from Morris Croxall, and held it until he conveyed to Shererd on the 5th of January, 1827, and that Shererd was continuously in possession from that time down to the commencement of the suit, “ and that possession was obtained *287 by the defendant, by a fair and bond fide purchase of the lands in question of a party in possession and supposed to have a legal title thereto.” The finding of the jury brings the case exactly within the terms of the statute. And there had been uninterrupted possession for more than the statutory period of thirty years when the action was commenced.
It is said that the possession of the defendant was subordinate to the ultimate right and title of the plaintiff’s lessor, and was in effect his possession. This is not so. The defendant was a bond fide purchaser. Such a party holds advei'sely to all the world. ITe may disclaim the title under which he entered,, and set up any other title and any other defence alike against his vendor and against others.*
It is said also that the remainder to Thomas Croxall was contingent and expectant until the death of his father and mother; that nothing passed by his deed to Wall, and that the statute could not, under these circumstances, affect tire rights of his heir in tail. Laying out of view the act of the legislature of 1818, and what was done under it, this is still an erroneous view of the subject. Thomas was living at the time of the execution of the deed of 1793, and took at once an estate vested in right, and deferred only as to the time of possession and enjoyment. It was in the latter respect only contingent and expectant. If this were not so, upon the death of the remainderman before the vesting of the possession his children could not inherit. †
. The struggle with the courts has always been for that construction which gives to the remainder a vested rather than a contingent character. A remainder is never held to be contingent when, consistently with the intention, it can be ■held to be vested. If an estate be' granted for life to ofie person, and any number of remainders for life to others in succession, and finally a remainder in fee simple or fee tail, *288 each of the grantees of a remainder for life takes at once a vested estate, although there be no.probability, and scarcely a possibility, that it will ever, as to most of them, vest in possession.*
Chancellor Kent says the definition of a vested remainder is thus fully and accurately expressed in the Revised Statutes of New York. It is, “ when there is a person in being who would have an immediate right to the possession of the lands, upon the ceasing of the intermediate precedent estate.”
It is the present capacity to take effect in possession, if the precedent estate should determine, which distinguishes a vested from a contingent remainder. Where an estate is granted to one for life, and to such of his children as should be living after bis death, a present right to the future possession vests at once in such as are living, subject to open and let in after-born children, and to be divested as to those who shall die without issue. A remainder, limited upon an estate tail,.is held to be vested, though it be uncertain whether it will ever take effect in possession.† A vested remainder is an estate recognized in law, and it is grantable by-any of the conveyances operating by force of the statute of uses.‡
Such an estate, if the entail had not been destroyed, passed by the deed of Thomas Croxall to Morris Croxall, by the deed of Morris Croxall to Garrett D. Wall, and by the deed of Wall to the defendant, Shererd. Whatever interest Charles Croxall had in the property after the death of his wife, passed by his deed of the 20th of September, 1825, to Wall, and from Wall, under the covenant of warranty in his deed,to Shererd.
The special verdict having found that the defendant obtained possession by a bond fide, purchase from -a party in *289 possession, and supposed to have a valid, title, the case is thus, in this view of the state of the title, brought again within the letter, and, as we think, within the meaning of the statute. The statute provides expressly that possession for the period of limitation shall vest in the occupant “ an absolute right and title to the land.” Such a title thus became vested in the defendant, Shererd. This would have been the effect of the bar without such a provision in the statute.*
The statute contains no qualification or exception as to issue in tail,-and we can interpolate none; nor can we review or reverse the finding of the jury. In Inman v. Barnes,† Mr. Justice Story said: “I take it to be well settled that if the time limited has once run against any tenant in tail, it is a good bar, not only against him, but also against all persons claiming in descent fer form.am doni through him.” In Wright v. Scott,‡ this same statute carne under the consideration of the court. The case involved entailed property. The court gave the same construction to the statute which we have given. Mr. Justice Washington remarked that if Such were not-the proper construction the issue in tail could never be barred., In cases of this class, as in all others, when the statute has begun, it continues to run until its effect is complete. It proceeds to throw its protection over the property, and does not stop by the way for any intermediate right which may have arisen during the period of its progress. It allows no immunity beyond the savings which it contains. Such statutes are now favorably regarded in all courts. They are “ statutes of repose,” and are to be construed and applied in a liberal spirit.
Our construction of this statute is sustained by the analo gies of the English and Massachusetts decisions respecting writs of formidou in descender under the statute of the 21 James I, and other statutes containing similar provisions.§ The law presents other analogies which tend strongly in the same direction. As between trustee and cestui que trust — a *290 joint tenant and a tenant in common, and their co-tenants, the bar becomes complete when the period has elapsed, which the statute prescribes, after the commencement of open and notorious adverse possession.* We think the special verdict sustains conclusively.this defence.
The judgment below was properly given for the defendant in error, and it is affirmed.

 Burgess v. Wheate, Eden, 226; Boteler v. Allington, 1 Brown’s Chancery, 72.

 Cholmondeley v. Clinton, 2 Jacob & Walker, 148; Walton v. Walton, 7 Johnson’s Chancery, 270; Doe v. Laming, 2 Burrow, 1109; Philips v. Brydges, 3 Vesey, 127.

 Garth v. Baldwin, 2 Vesey, Sr.., 655; Pratt v. McCawley, 8 Harris, 264; Fearne on Remainders, 121.

 Saunders on Uses, 280; Williams on Real Property, 155.

 14 Barnewall & Creswell, 181.

 Doe v. Passingham, 6 Barnewall & Creswell, 305; Gilbert on Uses, Sugden’s note, 1; Jackson v. Cary, 16 Johnson, 304; Franciscus v. Reigart, 4 Watts, 108; Williams on Real Property, 181; Roe v. Tranmarr, 2 Smith's Leading Cases, 511, note.

 United States v. Babbit, 1 Black, 55.

 Plowden, 241.

 Year Book, 12 Ed. IV, 14, 19.

 2 Blackstone’s Comm. 360; Cruise on Recoveries, 258.

 Knowles’s Argument in Taylor v. Horde, 1 Burrow, 84; Dewitt v. Eldred, 4 Sergeant & Rawle, 421.

 Stanly v. Colt, supra, 119

 2 Commentaries, 345.

 2 Ambler, 697.

 Watkins v. Holman, 16 Peters, 54; Blight’s Lessee v. Rochester, 7 Wheaton, 548; The Society v. The Town of Pawlet, 4 Peters, 506; Jackson v. Huntington, 5 Id. 402; Willison v. Watkins, 3 Id 43; Voorhies v. White’s Heirs, 2 Marshall, 26; Winlock v. Hardy, 4 Littel, 274.

 Goodtitle v Whitby, 1 Burrow, 228.

 Williams on Real Property, 208.

 Goodtitle v. Whitby, 1 Burrow, 228; Wendell v. Crandall, 1 Comstock, 491; Doe v. Lea, 3 Durnford & East, 41; Moore v. Lyons, 25 Wendell, 119, Doe v. Underdown, Willes, 293; Etter’s Estate, 23 Pennsylvania State, 381 Vanderheyden v. Crandall, 2 Denio, 18; Boraston’s Case, 3 Coke, 51; 4 Kent's Com. 202; Williams on Real Property, 207.

 Fearne on Remainders, 216; 4 Kent’s Com. 205.

 Leffingwell v. Warren, 2 Black, 605.

 2 Gallison, 315.

 4 Washingon Circuit Court, 24.

 Angel on Limitations, § 360

 Angel on limitations, §§ 425, and 419 to 436.